THE STATE OF OHIO, APPELLEE, *v.* FULTON, APPELLANT.

[Cite as State v. Fulton (1991), 57 Ohio St. 3d 120.]

(No. 90-359—Submitted October 24, 1990—Decided January 30, 1991.)

*Richard R. Benson, Jr.,* special prosecuting attorney, for appellee.

*Richard B. Hauser,* for appellant.

HOLMES, J. In his three propositions of law, appellant claims that the Holmes County Jury Commissioners systematically excluded potential grand jurors and petit jurors from the jury array on the basis of their Amish religious beliefs, thereby depriving appellant of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and under R.C. Chapter 2313. For the reasons which follow, we find appellant's arguments lack merit.

As a threshold to our inquiry we shall set forth the constitutional distinctions which have been recognized when examining the grand jury versus the petit jury selection process. With respect to the federal constitutional rights afforded state defendants who challenge grand jury arrays, the United States Supreme Court has decided that defendants may assert

violations of their rights only under the Equal Protection Clause of the Fourteenth Amendment. See *Castaneda* v. *Partida* (1977), 430 U.S. 482, 492-494; *Rose* v. *Mitchell* (1979), 443 U.S. 545, 551-558.[1]

The elements of an equal protection challenge to a grand jury array were set forth in *Castaneda*, which provides:

"* * * [I]n order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs. The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied. * * * Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time. * * * This method of proof, sometimes called the 'rule of exclusion,' has been held to be available as a method of proving discrimination in jury selection against a delineated class. * * * Finally, * * * a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing. * * * Once the defendant has shown substantial underrepresentation of his group, he has made out a prima facie case of discriminatory purpose, and the burden then shifts to the State to rebut that case." (Citations omitted.) *Id.* at 494-495; see, generally, *Strauder* v. *West Virginia* (1880), 100 U.S. 303 (a criminal conviction of a black could not stand under the Equal Protection Clause of the Fourteenth Amendment since it was based on an indictment of a grand jury from which blacks were excluded by reason of their race); *Virginia* v. *Rives* (1880), 100 U.S. 313 (a defendant may challenge the composition of a grand jury which purposely excludes members of his own race, but he may not assert that he has a right to a certain number of such persons to be included in the grand jury venire under the Equal Protection Clause of the Fourteenth Amendment); *Neal* v. *Delaware* (1881), 103 U.S. 370; *Aldridge* v. *Marshall* (C.A.6, 1985), 765 F. 2d 63, certiorari denied (1986), 474 U.S. 1062; *Ford* v. *Seabold* (C.A.6, 1988), 841 F. 2d 677, 687-689.

Thus, in order for a defendant to be afforded standing to bring an equal protection challenge under the Fourteenth Amendment the defendant must show that the procedure employed in the grand jury selection process resulted in the substantial underrepresentation of his or her race or of the identifiable group to which he or she belongs (*e.g.*, members of the Amish religious faith).

In the context of petit jury selections, the United States Supreme Court has held that the Sixth Amendment's provision for a jury trial is bind-

---

[1] The difference in treatment between grand juries and petit juries exists because the Fifth Amendment right to a grand jury does not apply to state prosecutions, while the Sixth Amendment right to a petit jury made up of a fair cross-section does apply to state prosecutions. *Hurtado* v. *California* (1884), 110 U.S. 516; *Ford* v. *Seabold* (C.A.6, 1988), 841 F. 2d 677, 688. The Fifth Amendment to the United States Constitution provides in pertinent part: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury * * *."

ing on the states by virtue of the Fourteenth Amendment. *Duncan* v. *Louisiana* (1968), 391 U.S. 145. In *Taylor* v. *Louisiana* (1975), 419 U.S. 522, 528, the Supreme Court stated that "* * * the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial. * * *"[2] In *Duren* v. *Missouri* (1979), 439 U.S. 357, the Supreme Court examined the issue of automatic exemptions from jury service granted for women at their request. The *Duren* court struck down the exemptions and set forth the following prerequisites that a defendant must satisfy in order to establish a prima facie violation of *Taylor's* fair cross-section requirement:

"* * * [T]he defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id.* at 364.[3]

A defendant may also reasonably noted that " '[t]he right to a proper jury cannot be overcome on merely rational grounds[.]' * * * Rather, it requires that a significant state interest be manifestly and primarily advanced by those aspects of the jury-selection process, such as exemption criteria, that result in the disproportionate exclusion of a distinctive group.

"* * *

"However, once the defendant has made a prima facie showing of an infringement of his constitutional right to a jury drawn from a fair cross section of the community, it is the State that bears the burden of justifying this infringement by showing attainment of a fair cross section to be incompatible with a significant state interest. * * *"

---

[2] In *Taylor* the court held that the fair cross-section requirement was violated by the systematic exclusion of women, even though the defendant was a male. *Id.* at 531. However, the Supreme Court did provide that "[t]he States are free to grant exemptions from jury service to individuals in case of special hardship or incapacity and to those engaged in particular occupations the uninterrupted performance of which is critical to the community's welfare. * * *" *Id.* at 534. Moreover, the states "* * * have much leeway in application [of the fair cross-section principle]. The States remain free to prescribe relevant qualifications for their jurors and to provide reasonable exemptions so long as it may be fairly said that the jury lists or panels are representative of the community. * * *

"It should also be emphasized that in holding that petit juries must be drawn from a source fairly representative of the community * * * [there is] no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition, * * * but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." (Citations omitted.) *Id.* at 538.

The Supreme Court in *Duren* v. *Missouri* (1979), 439 U.S. 357, 367-368,

[3] In *Duren* the court found that the first part of the prima facie case was satisfied because women were shown to be numerous and distinct from men so that if they were systematically eliminated from jury panels, the Sixth Amendment's fair cross-section requirement could not be satisfied. *Id.* at 364. The court noted that in order to establish the second prong of the prima facie test the defendant would have to demonstrate the percentage of the community made up of the group alleged to be underrepresented. And, in fact, the second and third prongs were established in *Duren* by the defendant's statistical presentation of a large discrepancy in the weekly venire, for nearly a year, of the ratio of men to women. *Id.* at 364-366.

bring a federal equal protection challenge to the selection and composition of the petit jury by adducing statistical evidence which shows a significant discrepancy between the percentage of a certain class of people in the community and the percentage of that class on the jury venires, which evidence tends to show discriminatory purpose, an essential element of such cases. However, this evidence is subject to rebuttal evidence that either discriminatory purpose was not involved or that such purpose did not have a determinative effect. By contrast, in Sixth Amendment fair-representative-cross-section cases, systematic disproportion itself demonstrates an infringement of the defendant's right to have a jury selected from a fair community cross-section. Therefore, the only question left unanswered if disproportion is found is whether the state had adequate justification for infringing the defendant's rights. *Duren, supra,* at 368, fn. 26.

In reviewing the propriety of appellant's arguments concerning the grand jury venire in the case *sub judice,* we note initially that appellant does not claim or establish that he is a member of the Amish religious faith. Consequently, appellant is not able to show that the procedure employed by Holmes County Jury Commissioners results in substantial underrepresentation of *his race or of the identifiable group to which he belongs.* Therefore, appellant lacks standing to assert that his equal protection rights under the Fourteenth Amendment were violated due to the systematic exclusion of persons from the grand jury array who belonged to the Old Order Amish religious faith.

In addressing appellant's statutory claim that potential grand jurors were improperly excluded, we find from the record that the Holmes County Jury Commissioners failed to properly maintain records of all proceedings before them, of all persons exempted, and of the time and reasons for such exemptions as required by R.C. 2313.12. Further, the record evidences that the jury commissioners, along with the county sheriff and clerk of courts, in past years routinely excluded members of the Old Order Amish religious faith because they believed that such individuals would not participate in jury duty due to their well-known prohibition, as stated by the trial judge, to "[j]udge not, and ye shall not be judged: condemn not, and ye shall not be condemned: forgive, and ye shall be forgiven." Clearly, there is no provision in R.C. Chapter 2313 that provides for such an exclusion without the individual first requesting the exemption from grand jury service. See R.C. 2313.34 ("* * * Any person exempted may waive his exemption from jury service for such period of time as he sets forth to the person notifying him of his selection for jury service"); R.C. 2313.31(A) (no jury commissioner shall willfully omit to put in the jury list the name of any person qualified for jury duty). Thus, the practice of *per se* exclusion of Amish individuals from grand jury venires was violative of R.C. Chapter 2313. However, the failure to follow the procedure set forth in R.C. 2313.01 *et seq.* for the selection of grand jury venires does not *ipso facto* reverse an otherwise valid conviction of a defendant. If the actual grand jurors that are impaneled possess the requisite qualifications to be grand jurors, then any irregularities will be viewed as non-prejudicial unless the defendant can make a showing that he was prejudiced by the selection process. *State* v. *Puente* (1982), 69 Ohio St. 2d 136, 138, 23 O.O. 3d 178, 179, 431 N.E. 2d 987,

989 (although the jury commissioner failed to place the names of those individuals who were entitled to exemption in the jury wheel, and also failed to keep a record of the proceedings before him as required by R.C. 2313.12, this court found the violations did not amount to reversible error where an otherwise qualified jury was chosen); *State* v. *Sublett* (1980), 70 Ohio App. 2d 252, 24 O.O. 3d 356, 436 N.E. 2d 1376 (the failure of the jury commissioner to publish notice of the drawing for a grand jury venire does not automatically require reversal of a conviction. The defendant must still show that the jurors selected were not qualified); R.C. 2313.41 ("* * * no indictment shall be quashed or verdict set aside for any such irregularity or misnomer if the jurors who formed the same possessed the requisite qualifications to act as jurors").

In the present case, the appellant has failed to identify how he was prejudiced by the exclusion of members of the Amish religious faith from his grand jury array. Further, in our review of the record we have discovered no evidence that the jury commissioners' error resulted in prejudice to the appellant. Rather, we find any error with respect to the grand jury venire was harmless beyond a reasonable doubt. See Crim. R. 52(A). Consequently, appellant's challenge to the grand jury array is without merit.

Appellant further contends that the petit jury was not chosen from a fair cross-section of the community as required under *Duren, supra,* and its progeny, thereby violating his Sixth and Fourteenth Amendment rights under the United States Constitution. In construing the standard set forth in *Duren* we find that members of the Old Order Amish religious faith do comprise a "distinctive" group. This conclusion is supported by the evidence submitted at the January 8, 1988 hearing that Amish make up an estimated thirty-five percent of the population of Holmes County and that they have a separate and distinct mode of living. See *Wisconsin* v. *Yoder* (1972), 406 U.S. 205 (the interrelationship of Amish faith and daily life is so pervasive as to warrant an exemption from state compulsory education law).

In examining the second and third prongs of *Duren,* which require a defendant to show that representation of the group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community and that the underrepresentation is due to a systematic exclusion of the group, we find that appellant in this instance has failed to satisfy his burden of proof. Specifically, a thorough review of the record does not reveal the irregularities that appellant claimed to have occurred in the selection process of the petit jury.[4] In a hearing conducted on October 7, 1988 in response, in part, to defense counsel's motion challenging the petit jury array, the following discourse took place:

"[THE PROSECUTING ATTORNEY]: As to Defendant's challenge to the petit jury array, I would like [the] record to reflect that Defendant's counsel and [the] Prosecuting attorney

---

[4] Both the state and appellant assume that the petit jury venire was conducted the same way as the grand jury venire. However, a review of the record does not support this conclusion. Instead, the record shows that in the formation of petit jury venires, the jury commissioners and the trial court made specific attempts to comply with the dictates of R.C. Chapter 2313.

have interviewed and reviewed the records of the Jury Commissioners, the Sheriff, the Court Reporter and the Court with selection to this venire. I proffer to the Court State's Exhibit A, which is an Affidavit of the Jury Commissioners to indicate that no person was excluded from the venire of this term of court by reason of religion. So it is my understanding that Defendant's third and 6th motions relating to Defendant's challenge to petit jury array have been dealt with.

"* * *

"THE COURT: As a matter of that seems to be the Court's recollection of the situation after the discussion in chambers. What's your attitude, Mr. Hauser [defense counsel] on that?

"MR. HAUSER: I agree with the statements proffered into the record by [prosecuting attorney] Mr. White."

The exhibit submitted into evidence at the hearing consisted of a sworn statement by the jury commissioners, which stated:

"We, William Mohr and Mabel Temple, first being duly cautioned and sworn do hereby state that we are duly appointed and serving Jury Commissioners of the Holmes County Common Pleas Court. In reviewing our records concerning the draw for the September 1988 Term of the Holmes County Common Pleas Court Petit Jury Venire we do hereby state that no persons were excused by the Jury Commissioners by reason of a prospective juror's religion."

Furthermore, in a hearing conducted in chambers on December 5, 1988, just prior to the commencement of the trial, the trial judge stated for the record:

"Let the record show that the Defendant filed a motion challenging the array of the petit jury by reason of the fact that it did not have members of the Amish religious faith. There

were no members of the Amish religious faith called to be used seated [sic] as jurors. Now, it is the Court's understanding that there was no effort by the Jury Commission to exclude members of the Amish religious faith from the venire in this case. And the Court, on the original venire for the November 7th trial date, excused Juror No. 2 and Juror No. 21, Juror No. 29 and Juror No. 30 as being members of the Amish, Old-Order Amish religious faith, the Court being satisfied in that respect. In the venire for December 5th the Court also excused Juror No. 9, Ella Erb and Juror No. 20, Esther D. Hershberger and, this morning, Juror No. 44, Noah J. Miller, as being members in good standing of the Old-Order Amish Religious Faith. And the reason for the excuse of these individuals is the same as is set forth in the Court's opinion concerning members of the Amish Religious Faith, Old-Order, serving on juries as the that [sic] opinion exists in the record of this case. And that is all I have to say on the subject.

"MR. HAUSER: I have one additional point I would ask [the] Court to elaborate. And that is: which of these jurors requested to be excused and which ones did the Court excuse by just [the] Court's own knowledge?

"THE COURT: They all requested to be excused, either by reason of the card coming back with a statement of that nature on it. Those cards are a matter of record in the Clerk's Office. As far as Juror No. 9 and Juror No. 20, Ella Erb and Esther D. Hershberger, I wrote letters to those women and only received a reply from Ella Erb, the letters, the reply letter indicating her status as a member in good standing of the Amish Religious Faith signed in her particular case a bishop, or a deacon rather, in the church the bishop not being available. * * *"

The record before us is devoid of

any evidence that would indicate that a systematic exclusion of members of the Old Order Amish faith from petit jury venires took place.[5] Instead, the record supports that not only the federal constitutional mandates were complied with, but state statutory mandates were also observed. Therefore, appellant has failed to show a prima facie violation of his right to a fair cross-section as set forth in *Taylor, supra,* and *Duren, supra.*

Accordingly, for the foregoing reasons, the judgment of the court of appeals is affirmed, albeit on different grounds.

*Judgment affirmed on different grounds.*

MOYER, C.J., SWEENEY, H. BROWN and RESNICK, JJ., concur.

DOUGLAS and WRIGHT, JJ., dissent.

WRIGHT, J., dissenting. The state systematically excluded members of the Old Order Amish religious faith from the petit jury venire, a fact conceded by the state. Therefore, I would reverse on the basis of *Duren* v. *Missouri* (1979), 439 U.S. 357. See, also, *Taylor* v. *Louisiana* (1975), 419 U.S. 522.

DOUGLAS, J., concurs in the foregoing dissenting opinion.

---

[5] In appellant's brief to the court of appeals he acknowledged that "[i]n the case of the petit jury, the Amish were selected and notified by the Jury Commissioners. * * *" However, appellant asserted that the trial court improperly dismissed some potential jurors due to their religious affiliations, even though they requested such exemption from service. Also, appellant claimed that at least one juror was excluded without so requesting because the trial court had it on "good knowledge she * * * [was] also a member of the Amish Religious Faith." The record reflects that the juror referred to by the trial court never returned the card sent by the court which would indicate her status. Thus, the juror, not the trial court, failed to comply with the venire procedures established by the court.