OPINION
 "The trial court erred in failing to declare a mistrial where Reed raised a Batson chal lenge to jury venire."
 "The trial court erred in failing to grant Reed's motion to suppress the identification made at the one-on-one show up."
 "Given the illegality of the one-on-one identification, Hill's identification testimony at trial should not have been admissible."
 "The jury verdict was against the manifest weight of the evidence."
On November 18, 1996, at about 4:40 a.m., Jonathan Hill left his apartment and went out to start his car so that it would "warm up" before he drove to work. He observed a man, later identified as appellant, walking on the sidewalk running next to the apartment building. Hill noticed that the man was wearing a brown "Carhart," a kind of workman's jacket, and "something red." The man continued down the sidewalk and turned left at the corner of the building. Hill started his motor vehicle, a 1988 black Ford Mustang GT, and then returned to his apartment to get his lunch.
When Hill returned to the parking lot, the same man he had observed earlier stepped out of Hill's car and pointed a gun at Hill. Hill described the gun as a black nine millimeter, the kind of guns "the police carry." He testified that he was afraid and that he saw his "life flash beyond me." Hill turned and ran back into his apartment building where he called the police. After watching the robber leave the parking lot in his Mustang, Hill borrowed his roommate's vehicle and went looking for his Ford. When asked why he did so, Hill stated that his car had bad brakes. Therefore, he thought the car might have crashed somewhere.
Hill drove around for a short while without seeing the robber or his Mustang. He then returned to his apartment complex. As he parked in the lot, the police drove up and asked him for a description of the suspect. After Hill described his assailant, the police stated that they had a suspect in custody. Hill went with the police officers to the scene where he identified his vehicle, which, during a police pursuit, crashed into a building. He also identified appellant as the person who took the Mustang. Appellant was wearing a brown workman's jacket and a red sweatshirt.
At the time the police apprehended appellant, they failed to find a gun either on his person or in the stolen vehicle. The time lapse between the theft of the motor vehicle and appellant's arrest was less than thirty minutes.
Appellant was first indicted on a single count of aggravated robbery, a violation of R.C. 2911.01(A)(1), with a firearm specification. He was later indicted on one count of robbery, a violation of R.C. 2911.02(A)(2). Both charged offenses arose from the same occurrence. He was found guilty of robbery and sentenced on that finding.
In his first assignment of error, appellant contends the trial court should have declared a mistrial because the state exercised its peremptory challenges to challenge potential jurors solely on the basis of race. See Batson v. Kentucky (1986),476 U.S. 79.
The defendant-appellant in this case is African-American. During voir dire, the prosecution exercised peremptory challenges to excuse the only two African-American prospective jurors. Appellant did not object to the state's use of these challenges. However, after the jury was chosen, appellant's trial counsel stated that he objected to the "jury array," asserting that it was not representative in terms of race. When asked by the court how his client was prejudiced by the array, counsel replied, "The race is not represented in the final selection."
Appellee maintains that the objection raised by trial counsel was not a Batson challenge. We must agree. Appellant failed to call the trial court's attention to any error in the state's exercise of its preemptory challenges at the appropriate time. Rather, appellant raised a challenge to the composition of the jury or the jury array[1].
Generally, a reviewing court will not consider any alleged error, including constitutional error, that counsel for the complaining party could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. State v. Awan (1986),22 Ohio St.3d 120, 122. However, in the present case, when the trial court began discussing the process used in selecting a jury array, the prosecutor mentioned that the two potential African-American jurors were challenged because "relatives of theirs had committed felonies." After finding that the percentage of African-Americans in the jury array corresponded roughly to the percentage of African-Americans in Lucas County, the trial court asked the prosecution: "And what was the reason that was given for the State exercising the peremptories as to those two jurors?" The prosecutor replied: "Both of those jurors had relatives, close relatives convicted of felonies." The court then asked appellant's counsel whether he had anything further, and counsel stated: "No, Your Honor." Because the trial court addressed the Batson
issue, this court shall consider that issue on appeal.
Crim.R. 24(C) permits either party to peremptorily challenge four jurors in felony cases other than capital cases. InBatson, the Supreme Court of the United States recognized, however, that the Equal Protection Clause of the Fourteenth Amendment, Constitution of the United States, precludes purposeful discrimination by the state so as to exclude minority groups from service on petit juries.
To establish a prima facie case of purposeful discrimination, the defendant must show that the prosecutor used peremptory challenges to remove from the venire members of a cognizable racial group, raising an inference that the use of the peremptory challenges was solely racially motivated. Powers v.Ohio (1991), 499 U.S. 400. Once a defendant demonstrates a primafacie case of purposeful discrimination, the burden of production shifts to the prosecution to present a race-neutral explanation for the use of the peremptory challenges. Purkett v. Elem (1995),514 U.S. 765, 115 S.Ct. 1769, 1770-1171. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be found race neutral. Hernandez v. NewYork (1991), 500 U.S. 352, 360. The determination of a trial court that the state did not possess discriminatory intent in the exercise of its peremptory challenges will not be reversed unless it is clearly erroneous. Id..
In the present case, appellant is an African-American and the two individuals excluded from the jury were the only African-American jurors. Assuming this is a prima facie case of purposeful discrimination, the prosecutor offered a race-neutral explanation for the use of his peremptory challenges. One of the excluded jurors stated that his brother and his sister were convicted of the felonies of forgery and felonious assault. The other juror said her mother was convicted of the crime of murder and was presently in prison. There is no discriminatory intent inherent in the prosecutor's explanation. Accordingly, appel lant's first assignment of error is found not well-taken.
The second assignment of error in this appeal chal lenges the trial court's denial of appellant's motion to suppress Hill's out-of-court identification of appellant as the person who took Hill's car.
The Supreme Court of the United States developed a two-part test to determine whether a trial court should suppress a victim's one-on-one "show up" identification of a suspect. Under the first prong of this test, it must be determined whether the "show up" procedure was unduly suggestive. Even where a court finds that the procedure employed was impermissibly suggestive, the out-of-court identification is nevertheless admissible if the identification itself is deemed reliable under the total ity of the circumstances. Neil v. Biggers (1972), 409 U.S. 188, 198-199;State v. Garner (1995), 74 Ohio St.3d 49, 61.
The factors considered "in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Id. at 199; State v. Williams (1995),73 Ohio St.3d 153, 163.
In the case before us, the following evidence was adduced at the hearing on the motion to suppress.
Hill had the opportunity to observe appellant on three occasions prior to his out-of-court identification. He first observed, at a distance of about ten feet, appellant walking on the sidewalk bordering the parking lot of his apartment complex. Hill stood next to his car, for "about a minute," watching appellant. He next observed appellant when Reed got out of the victim's Mustang and pointed a gun at him. Finally, Hill testi fied that, from the window of his apartment, he saw appellant as he drove away in the Mustang. Hill immediately called the police and described his car and the clothing worn by the robber.
The suspect crashed Hill's car and was arrested within thirty minutes after the commission of the offense. Much of that time was spent in a police pursuit beginning in one area of Toledo, Lucas County, Ohio, and ending in another area of the city. When the police took Hill to the scene of the crash, he, quickly and without prompting, identified appellant as the person who took Hill's motor vehicle. The identification was made less than an hour after the theft.
Based on these facts we conclude that, even in assuming that the "show up" procedure is deemed suggestive, the identification itself was reliable under the totality of the circumstances. Accordingly, the trial court did not err in denying appellant's motion to suppress Hill's out-of-court identification. Appellant's second assignment of error is found not well-taken.
Appellant's third assignment of error claims that the unlawful one-on-one identification tainted Hill's in-court identification of appellant. Due to our disposition of appel lant's second assignment of error, this assignment is rendered moot. Therefore, we shall not consider the merits of appellant's third assignment of error.
In his fourth assignment of error, appellant contends the trial court's judgment is against the manifest weight of the evidence. Specifically, appellant asserts that the prosecution failed to demonstrate, beyond a reasonable doubt, "that there was an attempt or threat to inflict physical harm."
In State v. Thompkins (1997), 78 Ohio St.3d 380, 387, the Supreme Court of Ohio set forth the role of an appellate court in determining whether a judgment is against the manifest weight of the evidence:
 "When a court of appeals reverses the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs [v. Florida (1982), 457 U.S. 31, 72 L. Ed. 2d 652, 102 S.Ct. 2211,] at 42, 102 S.Ct. at 2218, 72 L. Ed. 2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 (`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of jus tice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should only be granted in the exceptional case in which the evidence weighs heavily against the conviction.')"
R.C. 2911.02(A), as effective July 1, 1996, reads:
 "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
"* * *
 "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another."
Appellant contends that the jury must not have believed appellant used a gun in taking Hill's car because they failed to find him guilty of R.C. 2911.01(A)(1). He also points out that a person who was allegedly threatened with physical harm would not "pursue" the person driving his or her car.
We agree that R.C. 2911.01(A)(1) requires the state to establish that the offender had control of or possession of a deadly weapon and displayed, brandished, used, or in some manner indicated possession of the weapon during the alleged offense. However, this is not an element of R.C. 2911.02(A)(2). Thus, whether or not the jury believed appellant had a deadly weapon for the purpose of finding him guilty of the offense of aggra vated robbery is not dispositive of the question of whether the prosecution proved appellant committed a robbery beyond a reason able doubt.
All that is necessary, in this particular case, is proof that appellant threatened to inflict physical harm on another. In construing "threaten the immediate use of force[2]," under the prior statute setting forth the offense of robbery, the Supreme Court of Ohio determined that this element "is satisfied if the fear of the alleged victim was of such a nature as in reason and common experience is likely to induce a person to part with property against his will and temporarily suspend his power to exercise his will by virtue of the influence of the terror impressed." State v. Davis (1983), 6 Ohio St.3d 91, paragraph one of the syllabus.
Here, Hill saw appellant in possession and control of his Ford Mustang, testified that appellant stepped out of the car and confronted him at a distance of approximately six feet, and pointed a gun at the victim. Stating that he feared for his life, Hill turned and ran back into the apartment building. From these facts, the jury could have concluded that Hill's fear and temporary suspension of his will was such that he was induced to part with his automobile against his will. That is, that the facts related by Hill presented a threat to inflict physical harm on this victim. The fact that, after the robber fled, Hill searched for his stolen motor vehicle has no effect on the threat of physical harm at the time of the theft. For these reasons, appellant's fourth assignment of error is found not well-taken.
The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
 Melvin L. Resnick, J.
 James R. Sherck, J.
 Richard W. Knepper, J.
CONCUR.
[1] Crim.R. 24(E) allows a challenge to an array of petit jurors on the ground that it was not selected, drawn, or summoned in accordance with the law. See, also, R.C. 2313.41. State v.Fulton (1991), 57 Ohio St.3d 120, 123, adopting the test provided in Duren v. Missouri (1979), 439 U.S. 357, sets forth the standard to be applied where a defendant asserts that a petit jury array was not comprised of a fair representative cross-section of the community. Pursuant to Fulton, the defendant must show that the allegedly excluded group is a distinctive group in the community, that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and that this under representation is due to systematic exclusion of the group in the jury selection process. Id. at 364. The challenge to the array must be made prior to the examination of prospective jurors. See Crim.R. 24(E); State v. Williams (May 17, 1996), Lucas App. No. L-95-076, unreported. Appellant failed to challenge the jury array at the appropriate time. Further, a review of the record discloses that appellant could only meet the first prong of the test by showing that the "excluded" group, African-American, is a distinctive group in the community. He failed to offer any evidence on the remaining two prongs.
[2] Prior to July 1, 1996, R.C. 2911.02(A), read, in material part:
 "No person, in attempting or committing a theft offense * * * or in fleeing immediately after such attempt or offense, shall use or threaten the immediate use of force against another."
This section is now a separate offense under the new version of the statute. See R.C. 2911.02(A)(3). Appellant was not charged with a violation of this statute. Therefore, the state was not required to prove a "threat of immediate use of force." We use this example only to demonstrate the type of evidence needed to show a threat to inflict physical harm on another.