[Cite as *State v. Ward*, 2012-Ohio-6131.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-T-0010** |
| ANDRE A. WARD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 09 CR 774.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, and *LuWayne Annos*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Andre A. Ward, appeals the judgment of the Trumbull County Court of Common Pleas after a jury found him guilty of failure to comply with an order or signal of a police officer, a felony of the third degree, in violation of R.C. 2921.331(B) & (C)(1)(5)(a)(ii). For the following reasons, we affirm.

{¶2} At the jury trial, Officer Altier of the Liberty Township Police testified that he was parked in an apartment complex running surveillance in the vicinity of Belmont

Avenue and Gypsy Lane in Liberty Township, Ohio, at approximately 8:00 p.m. on July 31, 2009. Office Altier observed a white Buick, driven by a black male, approaching with no front license plate. As the vehicle passed, Officer Altier was able to observe that the driver had a lean face; long, black, braided hair; and a tattoo of some type of writing on his neck. The driver of the vehicle turned and looked directly at Officer Altier as he passed the officer's vehicle.

{¶3} Officer Altier began to follow the vehicle to effectuate a traffic stop. As a result of running the vehicle's license plate, Officer Altier learned that it was registered to a female, Shalonda Hall, who lived in close proximity.

{¶4} Officer Altier pulled behind the vehicle and activated his overhead lights; although he initially thought the vehicle was going to stop, it continued eastbound down Gypsy Lane. During this time, Officer Altier testified that he was able to observe the reflection of the vehicle's driver through both his rearview and side mirrors: Officer Altier noted that when effectuating a traffic stop and pursuing a vehicle, he offsets his vehicle to gain a tactical advantage. At the intersection of Gypsy Lane and Fifth Avenue, the vehicle sped off southbound. As he was now following the vehicle out of his jurisdiction, Officer Altier requested backup from the Youngstown City Police Department. A chase ensued whereby the vehicle traveled approximately 80 miles per hour in a residential neighborhood. Due to safety concerns, Officer Altier terminated his pursuit of the vehicle.

{¶5} Officer Altier testified that he then drove past Ms. Hall's residence, but the vehicle was not in the parking lot. Officer Altier testified that for the next month he would periodically drive past Ms. Hall's residence looking for the vehicle. He observed

the vehicle, with different plates, parked in the lot on August 31, 2009. Officer Altier called for a tow truck as the vehicle had been involved in a high speed chase. Noticing the tow truck, Ms. Hall exited the apartment building and began discussing the situation with Officer Altier. During their discussions, a man exited the building and began to walk towards Ms. Hall and Officer Altier. Officer Altier testified that he immediately recognized the male as the driver of the vehicle.

{¶6} Ms. Hall testified for the defense. She indicated that she was in Cleveland on the day of the incident and that she had left the keys to the Buick with her uncle. Ms. Hall could not recall the name or address of her uncle; she testified that she knew him only as "Uncle Junior." Ms. Hall described "Uncle Junior" as having tattoos and being bald.

{¶7} At the conclusion of the trial, appellant was found guilty of failure to comply with an order or signal of a police officer. Appellant was sentenced to a three-year term of imprisonment.

{¶8} Appellant timely appealed and, as his first assignment of error, states:

{¶9} "The appellant's convictions are against the manifest weight of the evidence."

{¶10} To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier-of-fact "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In weighing the evidence submitted at a criminal trial, an

appellate court must defer to the factual findings of the trier-of-fact regarding the weight to be given the evidence and credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶11} Appellant maintains the sole question presented to the jury at his trial was one of identity. The jury heard Officer Altier's testimony that he was able to see the face "straight on" of the man driving the vehicle. Further, Officer Altier noted that the driver drove 20 to 25 feet away from his cruiser before the chase began. Officer Altier noted that once the chase began, he was able to observe the driver's reflection through both the side and rearview mirrors. In fact, Officer Altier testified that he "had a full facial shot. [He] could see his face plain as day." Additionally, Officer Altier's report indicated that he was able to identify the suspect. In fact, Officer Altier testified that he immediately recognized appellant as the suspect when he exited Ms. Hall's apartment building.

{¶12} Appellant maintains that the report filed by Officer Altier only described the suspect as a "light-skinned black male, long braided hair, wearing a white tank top." Appellant argues that Officer Altier did not describe the suspect as having facial hair, tattoos or eyeglasses. Yet, as Officer Altier testified, this report was prepared by the dispatcher, not himself. Further, as previously indicated, this report stated that Officer Altier could identify the driver if located. From the testimony of Officer Altier, it is evident that he observed the suspect both during and after the chase. Officer Altier was able to immediately identify appellant as the suspect upon observing him exit Ms. Hall's residence. We are mindful that in weighing the evidence submitted at a criminal trial, an

appellate court must defer to the factual findings of the jury regarding the weight to be given the evidence and credibility of the witnesses. *Id.*

{¶13} Appellant's first assignment of error is without merit.

{¶14} Appellant's second assignment of error states:

{¶15} "The trial court erred, as a matter of law, overruling the appellant's request for a reasonable continuance and objection to the jury venire."

{¶16} Prior to voir dire, appellant's trial counsel orally moved for a continuance and the venire to be quashed. Appellant's trial counsel requested another venire to be present for the instant matter. In making this motion, appellant's trial counsel recognized that there were 26 potential jurors, none of whom were minorities. In overruling such motion, the trial court stated that the selection of the jury is "totally random and computerized, monitored by this Court."

{¶17} In his brief, appellant does not argue that the trial court abused its discretion in overruling his motion to continue. Instead, appellant maintains that it is impossible for this court to review whether the jury venire was improper as the trial court failed to articulate how the jury pool was established.

{¶18} The Sixth Amendment guarantee to a jury trial 'contemplates a jury drawn from a fair cross section of the community.' *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975). To establish a violation of this requirement, the '*defendant must prove*: (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such

5

persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury-selection process.' *State v. Fulton*, 57 Ohio St.3d 120 (1991), paragraph two of the syllabus, citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979). (Emphasis added.) *State v. McNeill*, 83 Ohio St.3d 438, 443-444 (1998).

{¶19} Before this court is the trial court's assertion that the jury selection process is random and computerized and is monitored by the trial court. Other than his observations that the venire did not contain any minorities, appellant has failed to produce evidence demonstrating that minorities were underrepresented on the venire in relation to their percentage in the community. *See State v. Strodes*, 48 Ohio St.2d 113, 115 (1978) ("the array of veniremen need not reflect an exact cross section of the community"). Additionally, appellant has not produced any evidence of the systematic exclusion of minorities in the jury-selection process. *See Ford v. Seabold*, 841 F.2d 677, 685 (6th Cir.1988) (underrepresentation on a single venire is not *systematic* exclusion).

{¶20} We note that appellant's trial counsel explored the issue of race during voir dire noting that appellant was a black male and the testifying officer was a white male. After this notification, none of the potential jurors indicated any discomfort or conflict that would suggest prejudice.

{¶21} Appellant therefore has not met his burden of demonstrating that his Sixth Amendment right to have a jury comprised of a fair cross-section of the community was violated; "mere speculation as to bias among the pool of prospective jurors will not

justify quashing the entire venire." *London v. Scurry*, 12th Dist. No. CA95-10-033, 1996 Ohio App. LEXIS 3120, *5 (July 22, 1996), citing 47 American Jurisprudence 2d, Jury, Section 255, at 923 (1995).

{¶22} Appellant's second assignment of error is without merit.

{¶23} Based on the opinion of this court, the judgment of the Trumbull County Court of Common Pleas is hereby affirmed.

CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.