[Cite as *State v. Wright*, 2024-Ohio-78.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| TERRELL Q. WRIGHT | : | Case No. 23CA000009 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Court of Common
Pleas, Case No. 22 CR 96


JUDGMENT:    Affirmed


DATE OF JUDGMENT:    January 10, 2024


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

GUERNSEY COUNTY PROSECUTOR      RICHARD HIXSON
409 Wheeling Avenue                       3808 James Court
Cambridge, OH  43725                      Suite 2
                                          Zanesville, OH  43701

*King, J.*

{¶ 1}   Defendant-Appellant Terrell Q. Wright appeals the March 30, 2023 judgment of conviction and sentence of the Guernsey County Court of Common Pleas. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On April 15, 2022, State Highway Patrol Sergeant Christopher Wood was on duty, working the 6:00 a.m. to 2:00 p.m. shift. At 9:18 a.m. Wood received a report that the Tuscarawas County Sheriff's Department was in pursuit of a black male, later identified as Wright, driving a black Jeep Compass with Michigan tags and traveling southbound on interstate 77. The report indicated the sheriff's department would terminate their pursuit at the Guernsey County line.

{¶ 3}   Wood made his way to a crossover on interstate 77 at mile marker 54 and sat stationary watching southbound traffic. At 9:28 a.m. he received word that the sheriff's department had terminated their pursuit. One minute later, Wood observed Wright as he illegally passed traffic on the berm at a high rate of speed. Wood activated his cruiser's overhead lights and siren and attempted to stop Wright.

{¶ 4}   Instead of stopping, Wright lead Wood and other troopers on a lengthy pursuit at speeds in excess of 100 miles per hour and up to 130 miles per hour on Interstate 77, US 40, Route 265, and a pedestrian bike and hike trail. While on Interstate 77, Wright crossed the highway median several times, driving the wrong way on Interstate 77 into oncoming traffic, around blind turns and hillcrests. He narrowly missed causing numerous accidents. He also drove the wrong way on U.S. 40, again nearly causing several collisions.

{¶ 5} The pursuit ended when Wright again entered Interstate 77 with three State Highway Patrol troopers in pursuit. Wright traveled for approximately one-and-a-half miles before cutting across the median at a high rate of speed causing the Jeep to vault over an embankment and roll down a hill. The Jeep came to rest on its roof. Wright was arrested and initially refused to give his name. He later identified himself to paramedics who arrived on the scene. Wright cried and apologized to the Troopers. $10,876 was found in the Jeep.

{¶ 6} As a result of these events, on May 22, 2022, the Guernsey County Grand Jury returned an indictment charging Wright with one count of failure to comply with the order or signal of a police officer, a felony of the third degree.

{¶ 7} Wright elected to proceed to a jury trial which took place on March 28, and 29, 2023. The state presented testimony from Sergeant Wood and Trooper Seth Jones. The jury viewed Wood's dash camera footage of the pursuit and Jones's body camera footage of Wright's arrest.

{¶ 8} Partway through the testimony of Sergeant Wood, Wright made a motion to disqualify the all-Caucasian jury based on the fact that he is African-American and there were no African-Americans on the jury. The motion was denied.

{¶ 9} Wright rested without presenting any evidence.

{¶ 10} After hearing the evidence and deliberating, the jury convicted Wright as charged. He was subsequently sentenced to 36 months incarceration and a $5000 fine which the trial court ordered be deducted from the cash seized at the scene.

{¶ 11} Wright filed an appeal and the matter is now before this court for consideration. He raises two assignments of error as follow:

I

{¶ 12} "THE TRIAL COURT PREJUDICIALLY ERRED IN FAILING TO DISQUALIFY THE ALL-WHITE JURY, IN VIOLATION OF DEFENDANT/APPELLANT'S CONSTITUTIONAL RIGHT TO A TRIAL BY JURY OF HIS PEERS."

II

{¶ 13} "DEFENDANT/APPELLANT'S CONVICTION UNDER R.C. 2921.331(C)(5)(A)(ii) WAS BASED ON INSUFFICIENT EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I

{¶ 14} In his first assignment of error Wright argues the trial court erred by failing to disqualify an all-white jury. We disagree.

{¶ 15} "[T]he selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial." *Taylor v. Louisiana*, 419 U.S. 522, 528, 95 S.Ct. 692, 697, 42 L.Ed.2d 690, 697 (1975). There is no requirement, however, that a petit jury mirror the community, nor is a defendant entitled to a jury of a particular composition. *Id.* at 538.

{¶ 16} In order to establish a prima facie violation of the fair cross-section requirement, Wright was required to demonstrate "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the underrepresentation is due to systematic exclusion of the group in the jury-selection process." *State v. Fulton*, 57 Ohio

St.3d 120, 566 N.E.2d 1195, (1991) paragraph two of the syllabus citing *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

{¶ 17} Wright did not object to the composition of the jury when it was seated. Transcript of trial (T.) 163-164. During a recess of the presentation of the state's case-in-chief, however, counsel for Wright made a motion:

> [Counsel for Wright]: Yes, Your Honor, this is a - - a motion that I should have raised earlier, probably at the time when the jury was being selected.
>
> My motion is I'm asking the Court to disqualify this jury based on the fact that there are no blacks on the jury. And my client and I have discussed this briefly, and what we are saying is that this is not symbolic of a jury of his peers, Your Honor, and, therefore, we're asking that the jury be disqualified.

{¶ 18} T. 243.

{¶ 19} The trial court overruled Wright's motion noting the "the jurors for Guernsey County are submitted from the rolls of the electorate" T. 244

{¶ 20} While Wright satisfies the first prong of the *Duren* analysis by noting the jury contained no African-American members and he himself is African-American, he fails to satisfy the remaining prongs. Neither during trial, nor in his brief has Wright alleged or or produced any evidence to show that African-Americans are unfairly represented in jury pools in relation to their numbers in Guernsey County, nor that the underrepresentation

was due to systematic exclusion of the group in the jury-selection process. The trial court noted that jurors in Guernsey County are submitted via voter registration rolls. "The use of voter registration rolls as exclusive sources for jury selection is constitutional and does not systematically, [or] intentionally, exclude any [economic, social, religious, racial, political and geographical group of the community]." *State v. Moore*, 81 Ohio St.3d 22, 28, 1998-Ohio-441, 689 N.E.2d 1, citing *State v. Johnson*, 31 Ohio St.2d 106, 114, 60 O.O.2d 85, N.E.2d 751 (1972); *State v. Spirko*, 59 Ohio St.3d 1, 35-36, 570 N.E.2d 229 (1991).

{¶ 21} The first assignment of error is overruled.

II

{¶ 22} In his second assignment of error Wright argues his conviction for failure to comply with the order or signal of a police officer is against the manifest weight and sufficiency of the evidence. We disagree.

{¶ 23} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the

conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 24} Wright was charged with failure to comply with the order or signal of a police officer pursuant to R.C. 2921.331(B)-(5)(A)(ii). That section provides:

> (B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.
>
> * * *
>
> (5)(a) A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:
>
> * * *
>
> (ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.

{¶ 25} Sergeant Wood and Trooper Jones both testified that Wright fled the officers after they activated their cruiser's lights and sirens in an attempt to effectuate a traffic stop of Wright. T. 237-238, 279. Instead of stopping, Wright fled, passing traffic on the berm, driving the wrong way on Interstate 77 and US 40 at speeds of up to 130 miles per hour,

driving on a pedestrian trail, and nearly causing many crashes along the way. T.224, 225-227, 230,232-236, 250-253, 279-283, 289, State's exhibits A and B.  There was video evidence of Wright's flight from troopers and jurors viewed that video.

{¶ 26} Upon review of the entire record, we find the state produced overwhelming evidence of Wright's guilt. Troopers clearly signaled for Wright to stop his vehicle, and Wright's flight clearly endangered other motorists causing a substantial risk of serious physical harm. We additionally find the jury's verdict is not against the manifest weight of the evidence. Accordingly, we overrule Wright's second assignment of error.

{¶ 27} The judgment of the Guernsey County Court of Common Pleas is affirmed.

By King J.,

Hoffman, P.J. and

Wise, J. concur.