OPINION
Defendant/appellant David Lee Kenney appeals from the February 5, 1993, Judgment Entry of Conviction and Sentence from the Holmes County Court of Common Pleas in a re-opened appeal, based upon the claim of ineffective assistance of appellate counsel. Appellant was convicted of conspiracy to commit aggravated murder in violation of R.C. 2923.01. Plaintiff/appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS
The defendant-appellant was charged in the Holmes County Court of Common Pleas on November 19, 1992, on one count of Conspiracy to Commit Aggravated Murder, under R.C. 2923.01. A preliminary hearing was held on November 24, 1992, whereafter the case was bound over to the Holmes County Grand Jury. The appellant was indicted on December 3, 1992, on one count of Conspiracy to Commit Aggravated Murder, in violation of R.C. 2923.01. Appellant was arraigned on December 7, 1992, at which time he entered a plea of not guilty. Trial was held February 2, 1993, through February 5, 1993. The following facts were elicited at trial: During July and August of 1992, appellant was in the Holmes County Jail serving a sentence for "Driving Under the Influence." Dan Ott was in jail at this time being held pending trial, on a felony matter. Ott testified that appellant approached Ott while both were incarcerated and let Ott know that appellant would kill for money, just as appellant had killed in the past for hire. Ott had a long criminal record, had served prison sentences before, and had a wife with cancer. He did not want to return to prison. Ott realized that the appellant's representations could ultimately benefit Ott if Ott would relay them to local law enforcement officials. Ott thereafter "played along" and told the appellant that Ott had a witness in a case in another county that Ott wanted "taken care of". The appellant readily agreed that he could take care of this matter for Ott for cash. In September of 1992, when Ott was released from the Holmes County Jail on bond, he contacted the Holmes County Sheriff's Department. He met with Detective DeFelice and conveyed information concerning the appellant's willingness to enter into a contract for murder. Detective DeFelice decided to pursue this information and determine if the appellant would indeed enter a contract with Ott to murder a fictitious witness. Detective DeFelice with the assistance of the Bureau of Criminal Investigation and Identification [hereinafter BCI] Agent Rebecca Sturgill, electronically wired and monitored Ott and his conversations in face-to-face meetings with the appellant. From September 14, 1992, to November 19, 1992, there were seven face-to-face meetings between appellant and Ott. All seven of these face-to-face meetings were electronically monitored. There were also two telephone conferences between the appellant and Ott which were also electronically monitored and taped by DeFelice. During this time, appellant was on work release from the Holmes County Jail during the day and Ott was able to meet with him near and around the Holmes County Jail and Courthouse. Audio tapes were made of all of the conversations. A video tape was made of some of the meetings as well. In addition, all the face-to-face conversations were overheard contemporaneously by Detective DeFelice and/or Agent Sturgill. The jury heard the testimony of both Detective DeFelice and Agent Sturgill summarizing the conversations that occurred at each of these meetings. Selected portions of the audio and video tapes were played for the jury during the trial. In addition, upon request of defense counsel, the jury was provided with transcripts of the audio and video tapes of the meetings and the audio and video tapes and the means by which to replay the tapes in the jury room. During the course of the contacts between appellant and Ott, appellant asked Ott to open a bank account and deposit money into it as a down payment on the murder contract. Appellant planned to use this money to pay off his fine with the Holmes County Court so he could possibly obtain an early release. The bank account was opened and the money, a $400.00 down payment, was deposited between October 6, 1992, and October 30, 1992. On November 4, 1992, the appellant paid off his fine. On November 19, 1992, appellant was released from the Holmes County Jail. Ott and the appellant had pre-arranged that Ott would meet appellant at a parking lot across the street from the Holmes County Jail. Investigators had arranged to monitor and record appellant's actions. Ott's person and car had been wired for electronic monitoring. In addition, trailing surveillance had been arranged with the Holmes, Medina and Elyria County Sheriff's Departments as well as BCI agents. A Medina County Detective had been chosen to play the role of the "target". Ott and the appellant had planned to travel to Medina to a car lot so that the appellant could identify the target at the target's place of employment. Then, they would travel to Elyria where the appellant would attempt to buy a firearm. On the day of his release from jail, appellant was released from the Holmes County Jail through the back exit which was not visible from the parking lot where Ott waited. Appellant walked around the Sheriff's Department and across the street to get to Ott's car, which was waiting in a parking lot. Appellant chose not to go elsewhere and chose to continue his contact and conspiracy with Ott, as pre-arranged as part of the murder scheme. Appellant and Ott traveled to Medina. Throughout the trip the two discussed the murder contract in detail, particularly the money, weapon and method of murder. At the Medina car lot, Ott identified the target to appellant. Appellant exited the car and observed the target at close range for approximately five minutes. Appellant then re-entered Ott's vehicle and they traveled to Elyria where they stopped at a private residence. Appellant told Ott that appellant would attempt to purchase a firearm from the resident of the house, Mr. Frank Lender. Appellant exited the vehicle and went to the door but Mr. Lender was not home. Thereafter, Ott paid the appellant $1,100.00 as the remainder of the down payment for the contract. Appellant then told Ott to drive to another location so he could again attempt to buy a gun. Shortly thereafter, law enforcement officers closed in and arrested appellant and Ott. Appellant was taken to the Elyria County Sheriff's Department where he was interrogated. Appellant initially denied any knowledge whatsoever of a murder conspiracy. Appellant was thereafter advised that everything he had said to Ott during the day had been overheard and electronically monitored and recorded. He was further advised of the electronic surveillance and monitoring from September 1992 through November 1992. The appellant still denied any knowledge of a murder conspiracy. In addition, he stated that he only got out of the car in Medina to urinate in the parking lot. Appellant claimed he went to Elyria to pay back money that he owed an individual. And finally, appellant contended that the $1,100.00 that Ott paid him was for a dry wall job. At trial, appellant's theory of defense was that he never intended to murder anyone. He stated that he was only trying to "con" Ott out of money in order to pay off a fine. However, evidence presented at trial showed that at no time prior to trial did the appellant ever tell any law enforcement official, or anyone else for that matter, that he had no intention of going through with the conspiracy or that it was simply a "con game". In fact, after his arrest and interrogation, appellant placed a telephone call from jail to Ott and wanted to know if Ott was out on bond and also asked how the Sheriff Department found out about their plans. Appellant was seemingly unaware that the target was fictitious or of Ott's actual role in the conspiracy. Appellant was found guilty by a jury of the charge of Conspiracy to Commit Aggravated Murder. Appellant was sentenced to an indeterminate term of incarceration of seven to twenty-five years by a Judgment Entry filed February 5, 1993. Appellant filed a direct appeal from his conviction in the Holmes County Court of Common Pleas. This Court, by opinion dated November 1, 1993, affirmed appellant's conviction. Appellant, thereafter, appealed to the Ohio Supreme Court which dismissed his appeal by Judgment Entry filed February 9, 1994, on the basis that it presented no substantial constitutional question. Thereafter, appellant filed a Motion for Post-Conviction Relief which was denied by the trial court by a June 4, 1994, Judgment Entry. Appellant's motion to file a delayed appeal from the trial court's denial of his Motion for Post-Conviction relief was denied by this court by Judgment Entry filed January 2, 1997 (Case No. 96-CA-563). On April 14, 1997, appellant moved to re-open his appellate case based upon a claim of ineffective appellate counsel. This court, by Judgment Entry filed May 27, 1997, granted appellant's motion to re-open the case pursuant to Appellate Rule 26(B)(1). Appellant raises the following assignments of error pursuant to his claim of ineffective assistance of appellate counsel.
ASSIGNMENT OF ERROR I
 THE STATE DID NOT ESTABLISH A CONSPIRACY EXISTED AS DEFINED BY THE STATUTE, OHIO CASE LAW, OR FEDERAL CASE LAW.
ASSIGNMENT OF ERROR II
 THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT DEFENDANT-APPELLANT ACTED WITH PURPOSE, A REQUIRED ELEMENT OF CONSPIRACY.
ASSIGNMENT OF ERROR III
 THE TRIAL COURT'S FAILURE TO EXCLUDE ALLEGED PRIOR ACTS AND WRONGS DENIED THE DEFENDANT-APPELLANT HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL.
ASSIGNMENT OF ERROR IV
 THE TRIAL COURT'S ERROR IN NOT PERMITTING THE DEFENSE TO CALL WITNESS, FRANK LENDER, DENIED DEFENDANT-APPELLANT HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL.
ASSIGNMENT OF ERROR V
 THE CONVICTION OF THE DEFENDANT-APPELLANT IS FUNDAMENTALLY UNFAIR AND MUST BE SET ASIDE AS IT WAS OBTAINED THROUGH THE USE OF FALSE TESTIMONY.
ASSIGNMENT OF ERROR VI
 THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ADMITTED INTO EVIDENCE THE TRANSCRIPTS OF THE TAPE RECORDED CONVERSATIONS OF THE CONVERSATIONS BETWEEN DEFENDANT-APPELLANT AND THE STATE'S AGENT WITHOUT A STIPULATION AS TO THEIR ACCURACY BY ALL PARTIES, THE COURT WAS REQUIRED TO READ THE TRANSCRIPTS WHILE LISTENING TO THE TAPES AND THEN THE COURT IS [sic] REQUIRED TO GIVE A LIMITING CAUTIONARY INSTRUCTION TO THE JURY.
ASSIGNMENT OF ERROR VII
 AMISH, WHO COMPRISE FIFTY PER CENT (50%) OF THE POPULATION OF HOLMES COUNTY, WERE SYSTEMATICALLY EXCLUDED FROM SERVING ON THE JURY DENYING DEFENDANT-APPELLANT A TRIAL BY A JURY THAT WAS A REPRESENTATIVE CROSS SECTION OF THE COMMUNITY.
ASSIGNMENT OF ERROR VIII
 THE TRIAL COURT COMMITTED PLAIN ERROR IN NOT INSTRUCTING THE JURY ON THE DEFENDANT-APPELLANT"S THEORY OF THE CASE.
ASSIGNMENT OF ERROR IX
 THE ATTITUDE AND COMMENTS OF THE TRIAL JUDGE DENIED DEFENDANT-APPELLANT A FAIR TRIAL AND HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW.
ASSIGNMENT OF ERROR X
 THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO INSTRUCT THE JURY ON ALL OF THE ESSENTIAL ELEMENTS OF THE CRIME OF CONSPIRACY TO COMMIT MURDER [sic].
ASSIGNMENT OF ERROR XI
 THE TRIAL COURT COMMITTED PLAIN ERROR BY NOT INSTRUCTING THE JURY ON ENTRAPMENT.
ASSIGNMENT OF ERROR XII
 DEFENDANT-APPELLANT'S TRIAL COUNSEL FAILED TO RENDER ADEQUATE LEGAL ASSISTANCE IN VIOLATION OF APPELLANT'S RIGHT TO COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION.
ASSIGNMENT OF ERROR XIII
 THE DEFENDANT-APPELLANT'S RIGHT TO DUE PROCESS WAS VIOLATED BY THE CUMULATIVE EFFECT OF THE FOLLOWING ERRORS: THE STATE DID NOT ESTABLISH A CONSPIRACY EXISTED AS DEFINED BY THE STATUTE; THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT DEFENDANT-APPELLANT ACTED WITH PURPOSE; THE ERROR OF NOT ALLOWING FRANK LENDER TO TESTIFY; THE USE OF FALSE TESTIMONY; THE ADMISSION INTO EVIDENCE OF THE TRANSCRIPTS OF THE TAPE RECORDED CONVERSATIONS BETWEEN DEFENDANT-APPELLANT AND THE STATE'S AGENT; THE ERROR OF THE JURY NOT BEING INSTRUCTED ON THE DEFENDANT-APPELLANT'S THEORY OF THE CASE; THE NEGATIVE ATTITUDE AND COMMENTS OF THE TRIAL JUDGE; AND INEFFECTIVE ASSISTANCE OF COUNSEL. ASSIGNMENTS OF ERROR — SUPPLEMENTAL BRIEF
ASSIGNMENT OF ERROR I
 1. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 1A. COUNSEL DEVELOPED NO CONSISTENT TRIAL STRATEGY. EXAMINATION OF THE RECORD REVEALS THAT COUNSEL FOR THE DEFENDANT CONSISTENTLY PRESENTED CONFLICTING THEORIES FOR ACQUITTAL. THESE THEORIES CONSISTED OF ENTRAPMENT, WHICH WAS INAPPROPRIATE UNDER THE LAW. IMPOSSIBILITY, WHICH WAS INAPPROPRIATE UNDER THE LAW, AND THEFT BY DECEPTION WHICH WAS CONSISTENT WITH THE CLAIMS OF THE DEFENDANT.
 1B. COUNSEL ELICITED PAST ACTS TESTIMONY ON CROSS-EXAMINATION OF THE STATE'S WITNESS AFTER SUCH EVIDENCE HAD BEEN EXCLUDED DUE TO A SUCCESSFUL MOTION IN LIMINE FILED BY THE ATTORNEY FOR THE DEFENDANT.
 1C. COUNSEL FAILED TO PROVIDE A LIST OF POTENTIAL WITNESSES TO THE PROSECUTION SUBSEQUENTLY RESULTING IN THE EXCLUSION OF WITNESS FRANK LENDER.
 1D. DEFENSE COUNSEL'S REMARKS DURING OPENING STATEMENTS SO PREJUDICED THE DEFENDANT THAT HE WAS DENIED THE OPPORTUNITY FOR A FAIR TRIAL.
 1E. COUNSEL'S FAILURE TO OBJECT TO THE SUFFICIENCY OF THE INDICTMENT PREJUDICED THE DEFENDANT IN THAT THE INDICTMENT WAS INSUFFICIENT PROPERLY STATE A CHARGE OF CONSPIRACY TO COMMIT AGGRAVATED MURDER. [sic]
SUPPLEMENTAL BRIEF — ASSIGNMENT II
 APPELLANT WAS DENIED DUE PROCESS OF LAW DUE TO "OUTRAGEOUS POLICE CONDUCT" CALCULATED TO ENTRAP THE APPELLANT IN A MURDER CONSPIRACY.
SUPPLEMENTAL BRIEF — ASSIGNMENT III
 APPELLANT WAS DENIED DUE PROCESS OF LAW BECAUSE THE INDICTMENT FAILED TO ALLEGE AN "OVERT ACT IN FURTHERANCE OF THE CONSPIRACY" AS THAT IS DEFINED IN OHIO REVISED CODE SECTION 2923.1 [sic].
Ineffective Assistance of Appellate Counsel A criminal defendant is entitled to effective assistance of appellate counsel on a first appeal as of right. Evitts v. Lucy (1985), 469 U.S. 387,396; In re Petition of Brown (1990), 49 Ohio St.3d 222, 223. The failure to provide effective assistance of appellate counsel constitutes a denial of significant constitutional rights and requires a reversal of the conviction. See Pension v. Ohio (1988),488 U.S. 75. Previously, pursuant to App.R. 26(B)(1), this court granted appellant the opportunity to re-open his appeal to pursue arguments that his appellate counsel was ineffective on his prior direct appeal. In determining whether a defendant has received the effective assistance of appellate counsel, the same standards set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674, for determining a claim of ineffectiveness of trial counsel apply. State v. Watson, supra, at 16,572 N.E.2d 97. Therefore, a claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id. It is appellant's burden to establish the ineffectiveness of his counsel because in Ohio, a properly licensed attorney is presumed to be competent. State v. Jackson (1980), 64 Ohio St.2d 107, 110-111, 413 N.E.2d 819. In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545, 558, citing Lockhart v. Fretwell, supra. The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." State v. Bradley, supra at 143, quoting Strickland v. Washington, supra, at 697. We note, however, that in considering appellant's claims, appellate counsel "need not advance every argument, regardless of merit, urged by the appellant. . . . But the attorney must be available to assist in preparing and submitting a brief to the appellate court, . . . and must play the role of an active advocate, rather than a mere friend of the court assisting in a detached evaluation of the appellant's claim." Evitts v. Lucey, supra, at 394 (citations omitted) (emphasis in the original). As the Cuyahoga County Court of Appeals has stated: Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The Court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes (1983), 463 U.S. 745,103 S.Ct. 3308, 3313, 77 L.Ed.2d 987. Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the Court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy.
State v. Ridgeway (May 20, 1998), Cuyahoga App. No. 56875, unreported, 1998 WL 274517, at 3.
In an appeal of this type, the sole issue cognizable by this court is ineffective assistance of appellate counsel. State v. Stanley (July 1, 1996), Stark App. No. 1994CA00025, unreported, 1996 WL 488825; See State v. Murnahan (1992), 63 Ohio St.3d 60,584 N.E.2d 1204. Appellant has failed to pose his issues in terms of ineffective assistance of appellate counsel although appellant attempts to incorporate ineffective assistance of appellate counsel issues into his Reply Brief. For the most part, appellant has filed these proceedings pro se. Justice is ultimately best served by an attitude of judicial tolerance when dealing with matters involving pro se litigants, as long as there is no danger or prejudice to the opposing party or to the court's essential function. Stebler v. Hoover Co. (May 3, 1993), Stark App. No. CA-9080, unreported, 1993 WL 171808 (citing National Mutual Insurance v. Papenhagen (1987), 30 Ohio St.3d 14, 16,505 N.E.2d 980). Therefore, we will couch and analyze each of the assignments of error in terms of ineffective assistance of appellate counsel. We must also note that appellant's brief and reply brief exceed the page limits for such briefs as set forth in Local Appellate Rule 9(B). Further, appellant's reply brief was filed one day late, pursuant to App.R. 18(A). However, due to appellant's pro se status and incarceration at the time these filings were made, we shall, in the interest of justice and under the circumstances of this case, review the filings without focus upon these violations of the appellate rules.
 I, II, III IV
In regard to these assignments of error, we find that these issues were raised on the initial, direct appeal. Kenney, I, supra. Pursuant to App.R. 26(B)(7), this court limits its review to those assignments of error and arguments which were not previously considered. See, State v. Yauger (Jan. 23, 1996), Tuscarawas App. No. 93AP080055B, unreported, 1996 WL 74510. Assignments of error I, II, III and IV are overruled.
 V
In his fifth assignment of error, appellant alleges that his conviction was fundamentally unfair because the conviction was based upon the admission of false testimony. As previously discussed, we shall address this issue in the context of ineffective appellate counsel. Therefore, the issue is whether appellate counsel was ineffective when he failed to assign as error on appeal that the conviction of defendant-appellant was fundamentally unfair and must be set aside as it was obtained through the use of false testimony. One of the prosecution witnesses, Detective Charles T. DeFelice, testified during cross-examination by defendant's counsel that appellant had been "arrested for poisoning a wife of ex- or husband of ex-wife or something of that matter." T.R. at 136. Defense counsel had asked Detective DeFelice whether any information about defendant-appellant's prior arrests, convictions or incarcerations substantiated the claims by Mr. Ott that Mr. Kenney had killed someone prior to this time. Appellant contends that the testimony given by Detective DeFelice was false because appellant was never arrested for attempting to murder someone by poisoning. Since no objection was made to the admission of this testimony, we shall analyze it under a plain error analysis. Crim.R.52(B) states that plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. The trial court record, as preserved for this appeal, does not reflect whether the testimony was true or false because appellant's prior criminal record is not preserved in the record for review. It is the responsibility of appellant to provide a complete record for appeal. State v. Render (1975), 43 Ohio St.2d 17; State v. Bell (1992), 78 Ohio St.3d 781. In an attempt to prove the falsity of the testimony of Detective DeFelice, appellant has offered an affidavit prepared by Kathy Kenney, an ex-wife of appellant. In the affidavit, Ms. Kenney states that, to the best of her knowledge, at no time was appellant arrested for attempted poisoning nor did he attempt to poison her or any friend, relative or ex-husband of hers. However, this court is limited to the review of information contained on the record and this information is not reflected in the record. See State v. Ishmail (1978), 54 Ohio St.2d 402, 377 N.E.2d 500. As such, this court is unable to determine whether the officer testified falsely or accurately and, therefore, we are unable to find plain error. Even though not specifically raised by appellant in this assignment of error, we will further analyze whether this testimony, even if true, was properly allowed into evidence by the trial court. Generally, evidence of a person's arrests are not admissible because that evidence is irrelevant to establish whether the person committed the act for which he or she was arrested. However, in the case sub judice, appellant's trial counsel elicited the evidence on cross-examination of a State's witness. Appellant's counsel did this in an attempt to establish that nothing in appellant's prior history of arrests, convictions or incarcerations substantiated the claims by Mr. Ott that Mr. Kenney had killed someone prior to this time. In other words, appellant's trial counsel invited the error when he asked a question about appellant's prior arrests. Appellant had boasted to Ott that appellant had committed prior murders and appellant's trial counsel was attempting to rebut that evidence by showing appellant had no prior record of murder. Under the invited error doctrine, a party may not take advantage of an alleged error which that party induced or invited. State ex rel Fowler v. Smith (1994), 68 Ohio St.3d 357, 626 N.E.2d 950. In addition, we do not find that the admission of this evidence, true or false, affected the substantial rights of the appellant. We find that the admission of this testimony had little, if any, impact on the outcome of the trial. First of all, the other evidence of appellant's guilt was overwhelming. The appellant's own words were tape recorded during the planning of the murder. The appellant went and observed the victim so appellant could identify the victim when it was time to kill him. The appellant tried to buy a gun. In addition, appellant's claim (that he only intended to con Mr. Ott out of money rather than go through with the murder) was not raised by appellant when appellant was initially confronted by the police. Secondly, it was made clear by the testimony that appellant's prior felony convictions were not for murder or attempted murder, but were for armed robbery in 1957 or 1958, trafficking in cocaine in 1985 and trafficking in marijuana in 1990. Transcript at 500. Thirdly, during jury instructions the trial court instructed the jury they could only consider prior acts testimony for limited purposes and could only consider it if they determined from the evidence that the defendant committed the other acts. Transcript at 547. Based on the foregoing discussions, we do not find that appellate counsel was ineffective in failing to raise the issue that appellant was prejudiced by the admission of false testimony regarding appellant's prior arrests. There was no evidence in the trial record that the testimony was false. Even if it were false testimony, we cannot find that its admission was prejudicial to the appellant based on the overwhelming nature of the other evidence and the trial court's instructions to the jury to consider prior acts only if they determined from the evidence that the appellant committed the acts. There was no evidence to show he committed or attempted to commit the poisoning of another.
 VI
In his sixth assignment of error, appellant claims that it was plain error to admit transcripts of the tape recorded conversations between appellant and the state's agent, Mr. Ott, without stipulation by all parties as to their accuracy. Appellant further argues that the trial court was required to read the transcripts while listening to the tapes to verify accuracy and that the court should have given a limiting, cautionary instruction to the jury regarding the use of the transcript. We agree that the proper standard of review of this issue is plain error. In the case sub judice, no objection was made to the use of the transcripts in question. As such, all but plain error is waived. State v. Slagle (1992), 65 Ohio St.3d 597, 604,605 N.E.2d 916. In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus; State v. D'Ambrosio (1993), 67 Ohio St.3d 424 437, [67 Ohio St.3d 185]. In State v. Waddy (1992), 63 Ohio St.3d 424, the Ohio Supreme Court permitted the use of a transcript not admitted into evidence as a listening aid for the jury, as long as there was no material difference between the tape and the transcript. In this case, the transcripts were authenticated by the government agent, Mr. Ott, and by law enforcement officials who listened as the tapes were made and then later listened to the recordings and verified the tape's accuracy. Likewise, witnesses verified that the transcripts were accurate when compared to the recordings. Defense counsel did not object nor were any discrepancies or inaccuracies pointed out by defense counsel at trial or by appellant on appeal. Therefore, we find that there was no material difference between the tapes and the transcripts, and therefore, there was no error in the use of the transcripts admitted into evidence as a listening aid for the jury. Initially, the trial court limited the use of the transcripts to the review of the jurors as they listened to the tapes as they were played, as was deemed permissable in Waddy, supra. The trial court held that the transcripts would not be submitted to the jury for use during deliberations. However, appellant's trial counsel requested that these transcripts be provided to the jury for use during deliberations. Tr. at 508-509. When the state had no objections, the trial court granted defense counsel's request and the transcripts were given to the jurors. Id. While courts have wrestled with the issue as to whether transcripts of recordings may be admitted as evidence and whether, if admitted, the transcripts may be used by the jury as an aid in listening to tapes or submitted to the jury for use in their deliberations, we find that we need not decide these issues here. We find that any error that may have been committed was invited error. "A party cannot take advantage of an error he invited or induced." State v. Seiber (1990), 56 Ohio St.3d 4, 17,564 N.E.2d 408. The trial court would not have submitted the transcripts to the jury but for the request of appellant's counsel. The appellant cannot now raise this issue as error. We find that no error was committed in the use of the transcripts as a listening aid to the jury once the transcripts were authenticated and no material differences were demonstrated by the testimony of appellant or other witnesses. In addition, we find that any error in giving the transcripts to the jury for use in their deliberations was invited error and cannot be considered upon appeal. Therefore, we find that the conduct challenged does not constitute plain error. We find that appellant's initial appellate counsel was not ineffective for having failed to raise this issue upon direct appeal. Appellant's sixth assignment of error is overruled.
 VII
In his seventh assignment of error, appellant claims a lack of members of the Amish community on the jury constituted a violation of federal law. Appellant asserts that fifty percent (50%) of the population of Holmes County are members of the Amish community. He claims that the lack of Amish on the jury is the result of systematic exclusion. Appellant does not say how the selection of the jury violated federal law nor which federal laws were allegedly violated. However, since appellant raised these issues pro se, we will address this assignment under the appropriate Constitutional Clauses, the Sixth and Fourteenth Amendments to the United States Constitution. It appears from appellant's brief that he is claiming that the pool of people from which jurors were selected did not include the Amish. Appellant alleges that the Amish make up 50% of the Holmes County population but none were on the jury. Appellant argues that this fact shows that the Amish were systematically excluded from the jury pool. However, appellant has not provided the portion of the transcript covering jury selection. When appellant fails to provide a transcript of proceedings or permissible substitute in lieu of a transcript, a reviewing court has nothing to pass upon and must affirm the lower court's decision. State v. Lane, (1997), 118 Ohio App.3d 485, 488,693 N.E.2d 327. "[T]he selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial." Taylor v. Louisiana (1975), 419 U.S. 522, 528, 95 S.Ct. 692, 696,42 L.Ed.2d 690. In order to establish a prima facie violation of the fair-cross section requirement under the Sixth Amendment, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process. Duren v. Missouri (1979), 439 U.S. 357, 99 S.Ct. 664, 668,58 L.Ed.2d 579. This issue was addressed by the Ohio Supreme Court in State v. Fulton (1991), 57 Ohio St.3d 120, 566 N.E.2d 1195. In Fulton, members of the Old Order Amish religious faith were found to be a distinctive group in the community, thus satisfying the first prong of Duran. Fulton, 57 Ohio St.3d at 125. As was the case in Fulton, appellant failed to satisfy the second and third prongs of Duren. Appellant alleges, without substantiation, that to not have any members of the Amish faith on the jury is against all probabilities. The transcript of proceedings provided to this court does not include the jury selection. Appellant has not explained nor documented his allegations of systematic exclusion. The record before us is devoid of any evidence that would indicate that a systematic exclusion of members of the Amish community from petit venires took place. Therefore, appellant has failed to show a prima facie violation of his right to a fair-cross section of the community. An appellant may also bring a federal equal protection challenge to the selection and composition of a petit jury by adducing statistical evidence which shows a significant discrepancy between the percentage of a certain class of people in the community and the percentage of that class on the jury venires, which evidence tends to show discriminatory purpose, an essential element of such cases. Fulton, 57 Ohio St.3d at 123-124. This evidence is subject to rebuttal evidence that either there was no discriminatory purpose or that such purpose did not have a determinative effect. Id. at 124. We find no showing of statistical evidence that shows a discrepancy between the percentage of Amish religious faith members of the community versus the percentage of those persons to serve on the jury. We have before us only appellant's bold assertions that 50% of the community is of the Amish faith and that none served on the jury. Likewise, the record, as preserved, does not reflect a discriminatory purpose. Because we lack the portion of the record from the trial court dealing with the jury selection process, we must presume regularity in that process. Therefore, we cannot find that appellate counsel was ineffective for failing to raise the issue that the jury selection process violated Federal laws by systematically excluding the Amish. Appellant's seventh assignment of error is overruled.
 VIII
In his eighth assignment of error, appellant contends that the trial court committed plain error in not instructing the jury on appellant's theory of the case. Appellant argues that his theory of the case was that he committed theft, not conspiracy to commit aggravated murder. He contends that it was plain error for the court to fail to give the jury the option to find appellant guilty of theft and give the jury only instructions pertaining to conspiracy to commit aggravated murder. Appellant argues that his trial attorney should have objected to the instructions and suggested an alternative jury instruction on theft. Since trial counsel failed to object to the jury instructions as given, all error is waived but plain error. State v. Bey (1999), 85 Ohio St.3d 487,497, 709 N.E.2d 484. In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus, State v. D'Ambrosio (1993), 67 Ohio St.3d 424, 437 [67 Ohio St.3d 185]. As in all assignments of error raised by appellant, we will consider this issue in terms of ineffective assistance of appellate counsel. Appellant was charged with conspiracy to commit aggravated murder. Generally, a person cannot be convicted of an offense for which he was not charged. City of Akron v. Hull (1943), 72 Ohio App. 449, 451-452,52 N.E.2d 877 (relying upon 27 American Jurisprudence, Indictments and Informations, Section 193). Therefore appellant could not be convicted of theft unless an exception to the general rule applied. However, no exception to this rule applies in this case. As an exception, a jury may consider three groups of lesser offenses on which, when supported by the evidence at trial, the jury must be charged and on which it may reach a verdict:
 (1) attempts to commit the crime charged, if such an attempt is an offense at law;
(2) inferior degrees of the indicted offense; or
(3) lesser included offenses.
State v. Deem (1988), 40 Ohio St.3d 205, 533 N.E.2d 294. Theft is not a charge related to conspiracy to commit murder. Since appellant was indicted on a charge of conspiracy to commit aggravated murder, not theft, and theft is not a related offense to conspiracy to commit aggravated murder, and, therefore, appellant could not have been convicted of theft by the jury, it was not error, nor plain error, for the trial court to have failed to offer the jury the option to convict the appellant of theft. Since no reversible error existed, we find appellant's previous appellate counsel was not ineffective for failing to raise this issue. Appellant's eighth assignment of error is overruled.
 IX
In his ninth assignment of error, appellant claims he was denied a fair trial and due process by the attitude and comments of the trial judge. In his arguments supporting this assignment of error, appellant argues that the attitude and comments of the trial Judge and the decision of the trial Judge to exclude a defense witness all demonstrated that the trial judge was biased against defendant-appellant. The appellant argues that this bias must be presumed to have denied appellant a fair trial and due process of law. Appellant cites, as example, an exchange between witness Bruce Johnson, the prosecutor, defense counsel and the trial court on pages 441-443 of the transcript. We cite relevant portions of these pages below preceded by relevant portions of testimony from pages 233-234 of the transcript.
 Mr. Knowling: Q. Okay. Thank you. Did you have an occasion to follow up and investigate and determine whether or not or determine, first, who lived at 340 High Street residence in Elyria?
Bruce Johnson: A. Yes.
Q. And who was that?
A. That was Frank Lender
 Q. Did you have an opportunity to contact Frank Lender and determine whether or not he knew the Defendant and whether or not he had any dealings with weapons?
A. Yes, I did.
Q. What did you determine?
 A. There was a definite connection that David Kenney was aware that Frank Lender did deal in guns.
 Q. Did Frank Lender in fact, according to Frank Lender, deal in weapons?
A. Yes, he did.
 Q. I assume he didn't tell you he dealt in untraceable weapons, but he dealt in weapons of some type?
A. Right.
Transcript at 233-234.
Later in the trial, the following exchange occurs:
 MR. KNOWLING: While we are here. You raised before about putting Frank Lender. You want to resolve that now?
THE COURT: Okay MR.
 BOWER: The defense would call Frank Lender as a witness for the defense.
 MR. KNOWLING: State would object and that Mr. Lender was not listed on the Defendant's discovery, although it identify, location of whereabouts was known to the Defendant prior to trial.
 THE COURT: Would you care to proffer what you anticipate the relevancy and reason why this witness wasn't raised in discovery?
 MR. BOWER: Well, Your Honor, the testimony yesterday given by Detective Johnston from I believe Medina Department indicated that Mr. Lender was a dealer in guns. I felt that that was somewhat of a mischaracterization of Mr. Lender and felt that was important in the interests of justice to present Mr. Lender today. Also, the State had opportunity to interview Mr. lender [sic] beforehand. Mr. Kenney has in his possession a statement signed by Mr. Lender. I don't believe there's any surprise here or any injustice by letting Mr. Lender speak.
THE COURT: Response, Mr. Knowling?
 MR. KNOWLING: Recalling this witness I don't think is going to add anything. My recollection of the testimony was that the Detective said he dealt in weapons on a pawn basis, mostly shotguns. I specifically asked a question whether or not there was any knowledge he dealt in illegal or unmarked weapons and the Detective said he had no information or knowledge of that, and I don't think the jury could have gotten that impression. I assume that's what they are putting the witness back on the stand for, to put him on the stand, to rebut some impression the jury got. I don't think any testimony from the Detective gave them that impression.
 THE COURT: The Court's recollection of the testimony was that the Detective did testify that this witness may have dealt in legal trade of guns, but I cannot remember any testimony regarding any allegations he was a gunrunner or involved in the illegal trade of guns to the point the State could use that to buttress its conspiracy argument. It was just an allegation he sometimes dealt in pawn with regard to certain firearms. It is not the character of this witness it is in the Court's opinion relevant to this case. And accordingly, if the defense was aware of the existence of this witness, did not raise it to the State, pursuant to Crim.R. 16 and Criminal Rules of Practice, the Court is going to grant the Prosecutor's objection and the Defendant shall not be allowed to call this witness. Anything further before we commence?
MR. BOWER: Nothing. Thank you.
Transcript at 441-443.
Appellant argues that this dialogue shows the trial court's bias since, as appellant asserts, there is a difference between the testimony of the witness and the testimony of that witness as recalled by the trial court. Appellant also argues that the testimony of Mr. Lender was excluded by the trial court even though it was "most important" to appellant's defense. The testimony from Bruce Johnson regarding Frank Lender indicated that Frank Lender, according to Frank Lender, dealt in weapons, and that Frank Lender never told Bruce Johnson that Lender dealt in untraceable weapons. Transcript at 234. The trial court recollected the testimony regarding Frank Lender in a slightly inaccurate manner. The trial court recalled that Johnson testified that Lender may have dealt in the legal trade of guns. The trial court could not recall any allegation that Lender was a gunrunner or involved in the illegal trade of guns. The trial court recalled that there was an allegation that Lender sometimes dealt in pawn with firearms. Transcript at 443. There is nothing in the portions of the transcript referenced by the appellant that indicates that it was ever established by the evidence that Lender dealt in untraceable firearms. Therefore, we do not find that the trial court's less than exact recollection of Johnson's testimony indicated that the trial court was biased against the appellant. Likewise, we do not find that the trial court's decision to exclude Frank Lender's testimony indicated bias by the trial court against the appellant. Trial counsel for appellant failed to disclose Frank Lender as a witness to the State during discovery. Criminal R. 16(E)(3) provides that the trial court may . . . prohibit the party from introducing in evidence the material not disclosed. . . ." The exclusion of the evidence was an option available to the trial court and his choice of that option does not necessarily indicate the trial court was biased against appellant. Upon review of the entire record and the challenged statements, we do not agree that the court demonstrated partiality and denied appellant a fair trial. The discussion cited by appellant as demonstrative of the court's attitude and comments was made at a side-bar conference and as such had no effect upon the trier of fact, the jury. Tr. at 440-443. Further, this court sees no comment or action of the trial court that constituted a denial of appellant's due process rights. Appellate counsel was not ineffective for failing to raise this issue. Appellant's ninth assignment of error is overruled.
 X
In his tenth assignment of error, appellant contends the trial court committed plain error when he failed to instruct the jury on all of the essential elements of the crime of conspiracy to commit aggravated murder. Since there was no objection made to this part of the jury instructions, we apply the previously stated plain error analysis. Appellant does not identify which specific elements of the crime charged were omitted. On review of the verbal instructions to the jury, as transcribed in the transcript submitted to this court, as well as the written jury instructions submitted to the jury and filed as a part of the record, we find no plain error. We find that the jury instructions submitted comply with the law as it existed at the time of the offense. As such, appellant's appellate counsel was not ineffective for failing to raise this alleged error. Appellant's tenth assignment of error is overruled.
 XI
In his eleventh assignment of error, appellant contends that it constituted plain error when the trial court failed to instruct the jury on entrapment. We agree that the appropriate standard of review is plain error. The record reflects that appellant failed to object to the instructions as given. "On appeal, a party may not assign as error the giving or failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Crim.R. 30(A). However, we may consider whether plain error occurred pursuant to Crim.R. 52(B): "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus; State v. D'Ambrosio (1993), 67 Ohio St.3d 424, 437 [67 Ohio St.3d 185]. As previously stated, we will consider this issue in the context of ineffective assistance of appellate counsel. Entrapment is an affirmative defense under R.C. 2901.05(C)(2). State v. Doran (1983), 5 Ohio St.3d 187, 5 OBR 404, 449 N.E.2d 1295. The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused. R.C. 2901.05(A). "The defense of entrapment is established where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute." State v. Doran, paragraph one of the syllabus. "Entrapment is a `confession and avoidance' defense in which the defendant admits committing the acts charged, but claims that the criminal design arose with the state's agent . . . The primary consideration in any determination of entrapment is the defendant's predisposition to commit the crime." State v. Johnson (1982), 4 Ohio App.3d 308, 310, 4 OBR 559, 5651, 448 N.E.2d 520, 522. Counsel for appellant concedes in his supplemental brief that the defense of entrapment is inapplicable to this case since the accused must admit his participation in the conspiracy and then show that he lacked the predisposition to commit the offense. Supp. Brief, page 5. Appellant testified at trial that he never intended to commit the murder but only intended to commit theft. Appellant's defense at trial was that he was trying to get money by playing along with a scheme that involved appellant killing another for money. According to appellant's defense, appellant was trying to con Mr. Ott out of money. Hence, appellant did not confess to participation in a conspiracy to commit murder due to the inducement of the state and, therefore, fails to qualify for the entrapment defense. Appellant may be arguing that he was entrapped into playing along with the scheme because the police knew that appellant needed money. Entrapment hardly seems to fit here either. Appellant admits that he was trying to run a con game to get the money. Appellant's admitted intent and activities indicate he had a predisposition to commit theft and his actions are hardly consistent with entrapment. Appellate counsel was not ineffective for failing to raise the issue on appeal that it was plain error for the trial court not to have given instructions as to the affirmative defense of entrapment. Appellant's assignment of error eleven is overruled.
 XII Suppl. Brief I
In appellant's twelfth assignment of error and first assignment of error of his supplemental brief, appellant argues that he was denied effective assistance of trial counsel. Because this appeal was re-opened on the limited basis of ineffective assistance of appellate counsel, appellant's assignments of error will be analyzed on the basis of whether appellate counsel was ineffective in failing to raise ineffective assistance of trial counsel in the first (direct) appeal. A claim of ineffective assistance of trial counsel requires a two-prong analysis. The first prong is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 113 S.Ct. 838,122 L.Ed.2d 180; Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136. In determining whether counsel's representation fell below an objective standard of reasonableness, the first prong of the analysis, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id. Further, it is appellant's burden to establish the ineffectiveness of his counsel because in Ohio, a properly licensed attorney is presumed to be competent. State v. Jackson (1980), 64 Ohio St.2d 107, 110-111,413 N.E.2d 819. In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness, the second prong of the analysis. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545, 558, citing Lockhart v. Fretwell, supra. The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." State v. Bradley, supra at 143, quoting Strickland v. Washington, supra, at 697. A. Appellant alleges that his trial counsel was ineffective for failing to investigate the case, interview witnesses, and call witnesses to testify. Initially, we must note that our review is limited to those materials in the record which were before the trial court. State v. Ismael (1978), 54 Ohio St.2d 4 [54 Ohio St.2d 402]. To the extent that this claim may depend upon facts which were outside the record, the proper vehicle for prosecution of this claim is a petition for postconviction relief, pursuant to R.C. 2953.21, not a direct appeal to this court. State v. Cooperrider (1983),4 Ohio St.3d 226, 448 N.E.2d 452. The record does reflect that trial counsel attempted to call a witness (Frank Lender) that was not provided on the witness list and failed to call a rebuttal witness in response to a witness' allegation that appellant had previously been arrested for attempting to poison his "a wife of ex — or husband of ex-wife or something of that matter." Tr. at 136. However, the calling of witnesses is a matter of trial tactics and will not be disturbed upon appeal. See State v. Clayton, supra. In our discussion of the fifth assignment of error we have already determined that appellant was not prejudiced by the information regarding the appellant's arrest for allegedly poisoning someone, whether or not that arrest record was correct or incorrect. Therefore, appellant was not prejudiced by appellant's trial counsel's failure to call a rebuttal witness as to this issue. Further, in Kenney I, we held that Mr. Lender's proposed testimony would not have been relevant to any fact in issue, and would have had no effect on the jury's determination of the elements of the offense. As such, under Strickland's second prong of analysis, we find that even if error were committed, appellant was not prejudiced. We find that trial counsel was not ineffective as to the issues raised by appellant in this assignment, therefore, appellate counsel was not ineffective for having failed to raise these issues. B Appellant claims that his trial counsel was ineffective when he failed to object to jury instructions which did not contain all of the essential elements of the crime. Appellant again fails to specify what elements were not contained in the jury instructions. As discussed in assignment of error X, we find that the jury instructions included all of the essential elements of the crime of conspiracy to commit aggravated murder. An attorney is not ineffective for failing to raise an objection which would have been denied. State v. Gibson (1980), 69 Ohio App.2d 91,95. We find that trial counsel was not ineffective in failing to object to this portion of the jury instructions since any objection would have been correctly overruled, and therefore, appellate counsel was not ineffective for having failed to raise the ineffectivenesss of trial counsel as to this issue. C. Appellant claims that his trial counsel was ineffective for failing to request jury instructions based upon appellant's theory of the case. Generally, the failure to request jury instructions is purely a matter of trial tactics and will not be disturbed upon review. See State v. Clayton (1980), 62 Ohio St.2d 45,402 N.E.2d 1189, cert. denied (1980), 449 U.S. 879, 101 S.Ct.66 L.Ed.2d 102. Although appellant does not state in this assignment of error exactly which jury instructions should have been requested, we have addressed a similar issue in assignment of error VIII, in which appellant argued that his theory of the case warranted an instruction on theft. As discussed in assignment of error VIII, to have issued an instruction on theft was not warranted under these circumstances. Since appellant was not charged with theft and could not be convicted of theft, to request such an instruction would have been futile and inappropriate. Any request for that jury instruction would have been correctly overruled and an attorney is not ineffective for failing to make a request for a jury instruction which would have been denied. State v. Gibson (1980), 69 Ohio App.2d 91, 95. We find that trial counsel was not ineffective for failing to request this instruction and, therefore, appellate counsel was not ineffective for having failed to raise the ineffectiveness of trial counsel as to this issue. D Appellant further argues that his trial counsel was ineffective for having failed to raise the affirmative defense of entrapment. We find that trial counsel did raise this argument in the trial, as confirmed by appellant's current appellate counsel, in his supplemental brief. See Supplemental Brief, page 5. While trial counsel did not request a jury instruction on entrapment, we have found in the eleventh assignment of error that an instruction on entrapment was not warranted in this case. We find that trial counsel was not ineffective in failing to request jury instructions on entrapment and therefore, appellate counsel was not ineffective in failing to raise the ineffectiveness of trial counsel as to this issue. E In Assignment of Error XII(5) of appellant's pro se brief and Assignment of Error I(B) of appellant's supplemental brief, appellant contends that his trial counsel's raising of appellant's prior arrest record, including an alleged arrest for a poisoning, after counsel had obtained a motion in limine to exclude such testimony, constituted ineffective assistance of counsel. The state presented testimony that appellant told Mr. Ott that appellant had murdered people, shot people for hire, and at times shot people for practice. Appellant had boasted that he had been involved in hunting accidents that were not really accidents, but, were actually killings either for hire or for pleasure, and had shot a person at a golf course. It was a legitimate trial tactic for appellant's trial counsel to attempt to minimize the impact of this evidence by asking questions designed to show that appellant had never been convicted or charged with murder or attempted murder previously. See State v. Jenkins (June 29, 1990), Licking App. No. 88-L-17094, unreported, 1990 WL 94035. In addition, we found in the fifth assignment of error, that the admission of this evidence did not prejudice the appellant. The record from the trial clearly indicated that appellant had not previously been convicted of any murder or attempted murder. We find that trial counsel was not ineffective in eliciting the above referenced testimony, and therefore, appellate counsel was not ineffective for having failed to raise the issue of ineffective assistance of trial counsel as to this issue. F Appellant argues that the examination of witnesses by his trial counsel was inept and therefore constituted ineffective assistance of counsel. The trial court specifically asked defendant-appellant at trial, pursuant to a question submitted by the jury, why appellant did not tell the officers when arrested that "this was no more than a con game." Appellant answered that he didn't "remember saying that". Transcript at 499. The trial court stated that appellant's trial counsel could follow up on that question but appellant's trial counsel never did. While we do know that the jury wanted to know the answer to that question, we cannot know whether there was a reasonable probability that the outcome of the trial would have been different had defendant-appellant given an answer to that question. Therefore, we cannot find from the record that appellant's trial counsel was ineffective in failing to follow up on the jury's question. We conclude that since we cannot find trial counsel ineffective as to this issue, we also cannot find appellate counsel ineffective for failing to raise ineffectiveness of trial counsel as to this issue. G In the supplemental brief, assignment of error I(A) appellant argues that trial counsel was ineffective because he failed to develop a consistent trial strategy. Appellant argues that since his trial counsel pursued defenses of entrapment, impossibility and appellant's intent to steal money from Mr. Ott, appellant's defense of intending to steal money from Mr. Ott was not effective. As previously stated, in issues of trial strategy, we must defer to trial counsel's judgment. State v. Clayton (1980), 62 Ohio St.2d 45, 49,402 N.E.2d 1189. It is not a breach of counsel's essential duties to his client, if a chosen strategy proved ineffective, even if, in hind sight, there may have been a better strategy available. Id. (citing State v. Lytle (1976), 48 Ohio St.2d 391, 396,358 N.E.2d 623, 627). Defense counsel opted for the strategies employed at trial and this court will not disturb the jury's determination simply because the strategy ultimately failed. Upon review of the record, we find that trial counsel was not ineffective and therefore, appellate counsel was not ineffective for having failed to raise the ineffectiveness of trial counsel as to this issue. H. In appellant's assignment of error I(C) in the supplemental brief, he asserts that his trial counsel was ineffective when counsel failed to provide a list of potential witnesses to the prosecution, resulting in the exclusion of Mr. Frank Lender as a witness. We disagree. In Kenney I, this court considered whether it was error for the trial court to deny trial counsel's request to call Frank Lender as a witness for the defense. In the Kenney I opinion, we wrote that "although the trial court may very well have committed error in not permitting Mr. Lender to testify, nevertheless, we conclude that it was not prejudicial error." We further found that "Mr. Lender's proposed testimony would not have been relevant to any fact in issue, and would have had no effect on the jury's determination of the elements of the crime charged." Although Kenney I considered a different issue, we find that the reasoning is equally applicable to this issue. We find that appellant was not prejudiced by the exclusion of Frank Lender's testimony and, therefore, trial counsel's failure to put Frank Lender's name on the witness list did not result in prejudice to appellant. Appellant thereby fails to meet the second prong of Strickland, which requires prejudicial harm. As such, appellant's appellate counsel was not ineffective when he failed to raise the ineffectiveness of trial counsel for failing to include Frank Lender's name on the witness list. I. In appellant's assignment of error I(D) of appellant's supplemental brief, appellant claims that his trial counsel's remarks during opening statement so prejudiced the appellant that appellant was denied a fair trial. Trial counsel's choice of strategy in choosing remarks for his opening statement are within the realm of trial tactics. State v. Bradley (1989), 42 Ohio St.3d 136, 144, 538 N.E.2d 373. Given the strong presumption that counsel's performance constituted reasonable assistance, counsel's trial tactic choices, including opening statement comments, must be viewed as tactical decisions and do not rise to the level of ineffective assistance of counsel. Id. In the case sub judice, appellant's trial counsel stated in part in opening statement that ". . . I haven't denied that my client has some negative aspects about him. And he probably could be proven easily to be a con-man and, yes, maybe he could be shown that he took someone's money." This statement is totally consistent with appellant's defense. Appellant's claim was that he may be a thief but he was not a murderer. We find this to be a legitimate trial tactic. We find that trial counsel was not ineffective and therefore, appellate counsel was not ineffective for having failed to raise the issue that trial counsel was ineffective as to portions of his opening statement. J. In appellant's assignment of error I(E) of the supplemental brief, appellant states that trial counsel's failure to object to the sufficiency of the indictment prejudiced the appellant. Appellant asserts that the indictment failed to properly state a charge of conspiracy to commit aggravated murder. An attorney is not ineffective for failing to raise an objection which would have been denied. State v. Gibson (1980), 69 Ohio App.2d 91, 95. As considered in the third assignment of error of the supplemental brief, we found the indictment was sufficient. Therefore, we find that trial counsel was not ineffective for failing to object to the sufficiency of the indictment and therefore, appellate counsel was not ineffective for having failed to raise the ineffectiveness of trial counsel as to this issue. In summary, we find that to the extent trial counsel's performance fell below an objective standard of reasonable representation as to any of the issues set forth in appellant's assignment of error XII (consisting of six parts) and/or in appellant's assignment of error I in his supplemental brief (consisting of five parts), appellant was not prejudiced. In addition, we find the cumulative effect of any errors was not prejudicial to appellant. There was sufficient evidence presented to the jury from which they could reasonably conclude appellant conspired with another to commit aggravated murder. Appellant's own words, as recorded by law enforcement officers, showed that appellant agreed to commit murder, visually identified the target, received money in exchange for his promise to murder the target and attempted to purchase a weapon. We cannot conclude that, even if error was committed, that the result of the trial was unreliable or the proceeding fundamentally unfair. As such, appellant's trial counsel was not ineffective as to the errors alleged and, therefore, appellate counsel was not ineffective for failing to assign as error in the direct appeal the ineffectiveness of trial counsel as to the issues covered in this opinion. Appellant's twelfth assignment of error and first assignment of error of the supplemental brief are overruled.
 XIII
In appellant's thirteenth assignment of error, appellant argues that his right to due process was violated by the cumulative errors as assigned in Assignments of Error I through XII of appellant's initial brief in this case. Multiple errors that are separately harmless may, when considered together, violate a person's right to a fair trial. State v. Goff (1998), 82 Ohio St.3d 123,140, 694 N.E.2d 916, 929. We find appellant received a fair trial, and any errors, if committed, were harmless or non-prejudicial, cumulatively as well as individually. Accordingly, appellant's thirteenth assignment of error is overruled. Assignment of Error II of Supplemental Brief In appellant's second assignment of error of his supplemental brief, appellant claims he was denied due process due to outrageous police conduct which was calculated to entrap appellant in a murder conspiracy. This issue was not raised in the trial court. Accordingly, our review of the alleged error must proceed under the plain error rule of Crim.R. 52(B). Plain error exists is substantial rights were affected. Appellant distinguishes the defense of entrapment from outrageous police conduct. While the entrapment defense uses a subjective standard, whereby the trier of fact looks at the accused's predisposition to commit the alleged offense, claims of police misconduct involve an objective standard and focus the examination upon the activities of the police. See State v. Doran (1983), 5 Ohio St.3d 187, 191-192,449 N.E.2d 1295 (citing Rochin v. People of California (1952)342 U.S. 165, 72 S.Ct. 205, 209, 96 L.Ed. 183). "An accused may put the conduct of the police or their agent into issue by arguing that such conduct was so outrageous as to violate due process." Appellant's Supplemental Brief, page 10 (quoting Rochin v. California (1952), 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183). To constitute a due process violation, the conduct of the law enforcement officials must shock the conscience. Rochin, supra at72 S.Ct. 205, 209. We find, after an examination of the record, that the conduct of the Holmes County Sheriff's Department, in the instant case, was not so outrageous as to violate appellant's due process rights. Appellant argues that appellant was induced into agreeing to commit the crime through an offer of freedom. Appellant contends that it shocks the conscience for the state to induce incarcerated individuals to commit crimes with offers of their freedom. Appellant needed money to pay off a fine that he was working off while in jail by doing odd jobs in and around the jail. Appellant believed he could be released if he could pay off his fine. Appellant had already served most of his sentence. Mr. Ott testified to the conversations he and appellant had while both were inmates at the jail. Mr. Ott testified that the appellant told about shooting and/or killing people for pleasure or hire in the past. Mr. Ott testified that the appellant said some people called appellant the "Rifleman" and that appellant said he would wound someone for $2,500.00 but it would cost $3,500.00 to kill someone. Transcript at 310-315. Mr. Ott told Detective DeFelice of the Holmes County Sheriff's Department about appellant's statements and about appellant's offer to harm someone for Mr. Ott if Mr. Ott had the money to pay for it. Detective DeFelice then tape recorded a conversation between Mr. Ott and the appellant during which Mr. Ott was wearing a wire. During that discussion, appellant tells Mr. Ott that if Mr. Ott wanted the person killed it would cost Mr. Ott $3,000.00 Based on the testimony at trial, we cannot find that the conduct the police engaged in to find out if appellant was a potential murderer was "outrageous police conduct". In addition, the appellant went much further along in the plan than was necessary to get the money needed to gain appellant's freedom. Appellant familiarized himself with "the target" and tried to buy a gun, all after appellant was out of jail. We do not find that appellant was denied due process of law due to "outrageous police conduct" used to entrap appellant in a murder conspiracy. The police engaged in reasonable conduct to see if appellant was a potential murderer. The police reasonably believed that appellant had offered to wound or murder another person based on information received from Mr. Ott. The police also had reason to believe appellant may have wounded or murdered people before. The police engaged in appropriate conduct, based on the information they had at the time, to attempt to get a dangerous man off the streets. We find that appellate counsel was not ineffective for failing to raise this error. Appellant's second assignment of error in his supplemental brief is overruled. Assignment of Error III of Supplemental Brief In the third assignment of error of his supplemental brief, appellant argues that his due process rights were violated when the indictment failed to allege a substantial overt act in furtherance of the conspiracy, as defined and required by R.C. 2923.01. Specifically, appellant argues that the overt act must be an act that is not part of the planning and agreement phase. We will apply Revised Code 2923.01, as it existed at the time the crime was committed and trial proceeded. The record contains no motion filed by trial counsel objecting to the indictment or requesting a more specific bill of particulars. Apparently, trial counsel was satisfied with the information contained therein. Moreover, the failure to object also indicates a waiver of any defect in the indictment and the bill of particulars. State v. Avery (1998), 26 Ohio App.3d 36,709 N.E.2d 875, State v. Biros (1997), 78 Ohio St.3d 426, 436,678 N.E.2d 891, 901-902, citing State v. Joseph (1995), 73 Ohio St.3d 450,455, 653 N.E.2d 285, 290-291; and State v. Mills (1992),62 Ohio St.3d 357, 363, 582 N.E.2d 972, 980 (Under Crim.R. 12(B) and 12(G), alleged defects in an indictment must be asserted before trial or they are waived"); see, also, State v. Williams (1977),51 Ohio St.2d 112, 117, 5 O.O.3d 98, 101, 364 N.E.2d 1364,1367-1368, death penalty vacated (1977), 438 U.S. 911,98 S.Ct. 3137, 57 L.Ed.2d 1156. Counsel cannot now be heard to claim error when he failed to call that error to the trial court's attention at a time when the error could have been corrected. Id. Accordingly, our review of the alleged error must proceed under the plain error rule of Crim.R. 52(B). Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise. An overt act has been defined as an "open act, done outwardly, without attempt at concealment, and performed pursuant to and manifesting a specific intent or design." State v. Papp (1980), 68 Ohio App.2d 21, 23,426 N.E.2d 518. We note that R.C. 2923.01 requires not only that a substantial overt act be alleged in the indictment, but also that it must be proven at trial. However, an assignment of error has only been raised in regard to the indictment. In this case, the indictment alleges that appellant physically identified the target of the murder by going to the target's alleged place of employment, that appellant traveled to Elyria, Ohio, for the express purpose of obtaining the murder weapon and that appellant received and accepted a down payment for the murder. We find that the indictment sufficiently alleged overt acts. In Papp, supra, the Franklin County Court of Appeals held that an indictment that alleged that mailing a letter in which murder targets were identified and a price offered and another letter in which the accused continued to request that the murders be committed and promising payment at a future date, constituted overt acts. Id. at 24. The court found that the letters manifested the accused's intent. As such, the allegations of the indictment were sufficient to meet the requirements of R.C. 2923.01(B). Further, the payment of money, to hire someone to commit murder has been found to be an overt act in furtherance of a unilateral conspiracy. State v. Fink (Dec. 21, 1992), Fayette App. No. CA92-01-001, unreported, 1992 WL 379358. In this case, the indictment included overt acts such as accepting money given appellant to hire him to commit murder, identification of the "target", and appellant's attempt to purchase a firearm. These acts were open. They were done outwardly and manifested an intent and design to commit the crime. See Papp, supra, and Fink. We find that the indictment alleged overt acts, sufficient to comply with R.C. 2923.01. Therefore, we find that appellate counsel was not ineffective when he failed to raise the issue on appeal that the indictments failed to allege a substantial overt act in furtherance of the conspiracy. Appellant's third assignment of error in his supplemental brief, is overruled.
Based on the foregoing, the Judgment of the Holmes County Court of Common Pleas is affirmed.
GWIN, P.J. and FARMER, J. CONCUR.